**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV 10-1054-PHX-JAT |
| Petitioner, | **ORDER** |
| vs. | |
| Jareer A. Tabari, | |
| Respondent. | |

Pending before the Court are Respondent Jareer A. Tabari's Motion for Judgment on the Pleadings (Doc. 43), Motion to Dismiss for Lack of Jurisdiction (Doc. 46), Motion to Strike Plaintiff's Separate Statement of Facts in Support of Plaintiff's Response in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 67), and Petitioner United States of America's ("the Government") Motion for Summary Judgment and Alternative Motion for an Independent Medical Psychiatric Examination (Doc. 68). The Court now rules on the motions.

**I.    Background**

**A. Criminal and Immigration Proceedings**

In the 1970's, Tabari came to the United States from Israel. In 1990, Tabari became a lawful permanent resident. On May 12, 1994, Tabari was convicted of Trespass in California and sentenced to nine days in jail. On March 14, 2002, Tabari was convicted of Disorderly Conduct, Soliciting Lewd Act in California and was sentenced to ten days in jail

and three years of probation. On May 14, 2004, Tabari pleaded guilty to the felony offense of Resisting an Executive Officer. He was sentenced to six months in jail and three years of probation. Shortly after his release from jail, Tabari violated the terms of his parole and was sentenced to two years in the California penal system.

On August 17, 2006, the California Superior Court found Tabari mentally incompetent to stand trial and ordered him to undergo treatment. On December 7, 2007, following treatment that included the involuntary administration of antipsychotic drugs, the Superior Court found Tabari restored to competency.

On November 17, 2008, the Department of Homeland security ("DHS"), Immigration and Customs Enforcement ("ICE"), took custody of Tabari after his release from California state prison. ICE transferred Tabari to the Florence Service Processing Center in Florence, Arizona. ICE issued and served a Notice to Appear, alleging the 2004 criminal conviction as a ground for removal under 8 U.S.C. § 1227(a)(2)(A)(iii).

On February 23, 2009, Tabari had an individual hearing before the immigration court. The immigration judge ordered Tabari removed to Israel and denied Tabari's applications for asylum, withholding of removal, and deferral of removal under Article III of the Convention Against Torture. Tabari reserved his right to appeal, but failed to file an appeal. The immigration judge's order therefore became administratively final.

**B. Mental Health History**

On September 5, 2008, Tabari was diagnosed with Psychotic Disorder NOS by a California Mental Health Examination. Tabari's medical file also contained diagnoses of schizophrenia and bipolar disorder. On June 5, 2009, Tabari was admitted to Sonora Behavioral Health Hospital for psychiatric evaluation.

On August 14, 2009, after an expedited evaluation, Dr. Jack Potts opined that Tabari suffers from schizophrenia or schizoaffective disorder with moments of cooperation. On March 17, 2010, after two brief examinations, Dr. Ronald Segal opined that Tabari was gravely disabled and posed a risk of harm to other people due to his mental illness. On August 1, 2010, after reviewing Tabari's medical records, but not personally examining him,

1 Dr. Tariq Ghafoor opined that Tabari most likely suffers from schizophrenia, paranoid type, with schizoaffective disorder as secondary consideration with antisocial, narcissistic, and histrionic personality traits.

## II. Respondent Tabari's Motions

### A. Motion to Dismiss for Lack of Jurisdiction and Motion to Strike

Tabari argues that this Court lacks jurisdiction over the Government's Petition because the Government's request to involuntarily medicate Tabari does not rely on a specific provision of the Constitution or federal law. But Tabari's arguments ignore the fact that the United States of America, as Petitioner, commenced this case. 28 U.S.C. §1345 provides, "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

Tabari has not pointed to an Act of Congress that would divest this Court of its jurisdiction over a case instituted by the United States. Tabari may believe that this Court does not have the authority to do what the Government asks, but that does not mean that this Court lacks jurisdiction over this matter. The Court can resolve quickly Tabari's Motion to Dismiss. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1345 because the United States commenced this action. The Court therefore denies Tabari's Motion to Dismiss for Lack of Jurisdiction (Doc. 46).

Tabari has filed a Motion to Strike (Doc. 67) the separate Statement of Facts that the Government filed along with its Response to the Motion to Dismiss. Tabari argues that neither the Federal Rules of Civil Procedure nor this Court's Local Rules provide for the filing of a separate statement of facts in support of a response in opposition to a motion to dismiss for lack of subject matter jurisdiction.

The Court notes that it can resolve factual issues when deciding a motion to dismiss for lack of jurisdiction. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). The Court therefore cannot say categorically that a statement of facts in support of a response to a motion to dismiss for lack of subject matter jurisdiction is never appropriate. But the

Court need not address the propriety of the separate statement of facts because the Court did not review the facts while deciding the Motion to Dismiss. The Court therefore denies the Motion to Strike as moot.

**B. Motion for Judgment on the Pleadings**

1. Legal Standard

Federal Rule of Civil Procedure 12(c) is "functionally identical" to Rule 12(b)(6). The same legal standard therefore applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, - - F.3d - -, 2011 WL 1053366, *11 n.4 (9th Cir. March 24, 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

The standard for deciding Rule 12(b)(6) and Rule 12(c) motions has evolved since the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, - - U.S. - -, 129 S.Ct. 1937 (2009).[1] To survive a motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.

---

[1] The Ninth Circuit Court of Appeals has applied *Iqbal* to Rule 12(c) motions. *Cafasso ex rel.*, - - F.3d - - , 2011 WL 1053366 at *11 n.4.

- 4 -

Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court may dismiss a complaint for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

2. Analysis and Conclusion

As set out above, the Court can grant a judgment on the pleadings for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri*, 901 F.2d at 699. Tabari's arguments seem to urge the Court to grant the Motion for the first reason, but could be directed toward the second reason as well.

Tabari argues the Court must dismiss the Government's Petition because the Government has not identified any statutory or regulatory scheme that gives ICE the authority to forcibly medicate him.[2] ICE's current "procedure" for involuntarily medicating detainees is to seek court approval. ICE does not have a procedure at the administrative level.

Tabari correctly notes that the cases addressing whether to involuntarily medicate happen to have arisen in the context of reviewing set administrative or state procedures. But that does not mean that the Government cannot petition this Court to authorize forced medication in the absence of a specific administrative procedure if forced medication would be in the best medical interests of the respondent and in the best interests of others under the Government's supervision. ICE's policy of seeking court approval for forced medication arguably might provide more due process to a detainee than an administrative-level policy or procedure.

The Court finds that it has the power to grant the relief requested by the Government if the Government meets the applicable standard, which the Court sets forth below. Because the Court cannot say that the Government could never prevail on the facts as alleged in the Petition, the Court will deny Tabari's Motion for Judgment on the Pleadings.

**III.  Government's Motion for Summary Judgment**

**A. Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[2]Tabari makes other arguments that are not appropriate for a Judgment on the Pleadings in the pending case, e.g, the validity of Tabari's continued detention. The Court therefore will not address those arguments here.

admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

### B. Analysis and Conclusion

In ruling on the Motion for Summary Judgment, the Court first must decide the proper standard to apply for the involuntary medication of a detainee in an immigration facility. The Court then must decide whether the Government has met that standard as a matter of law.

Individuals undisputedly have a significant, constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. *Washington v. Harper*, 494 U.S. 210, 221 (1990). The "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Id.* at 228. Nonetheless, forced medication may by appropriate under certain circumstances.

The parties do not cite any cases that specifically address when ICE can involuntarily

1 medicate a detainee, and the Court did not find any such cases. The Government argues that
2 the standards established in *Harper* should apply. Tabari argues that the *Harper* standards
3 do not apply because he is not a state prisoner convicted of a crime.

4 In *Harper*, the Supreme Court addressed whether a Washington state prison policy
5 for forcibly medicating prisoners provided adequate due process. After balancing the state's
6 interests in prisoner and staff safety against prisoners' constitutional rights to liberty, the
7 Supreme Court determined that the Washington Special Offender Center's policy comported
8 with constitutional requirements by affording sufficient due process. *Id*. at 224. The
9 Supreme Court held that due process permits involuntary treatment with antipsychotic drugs
10 for serious mental illness if an inmate is dangerous to himself or others and if the treatment
11 is in the inmate's best medical interest. *Id*. at 227.

12 At least one Circuit Court has applied the *Harper* standards in a civil setting. In
13 *Jurasek v. Utah State Hosp.*, 158 F.3d 506 (10th Cir. 1998), the Tenth Circuit Court of
14 Appeals reviewed the §1983 claims of a civilly committed man who objected to the state
15 hospital's involuntary treatment of him with psychotropic drugs. The Court of Appeals noted
16 that while an individual has a constitutional right to be free from involuntary medication,
17 state institutions also have an interest in preventing individuals from harming themselves or
18 others residing or working in the institution. *Id*. at 510.

19 The *Jurasek* court found that although the case before it differed from *Harper* because
20 the plaintiff was a civilly committed patient and not a prison inmate, the *Harper* standards
21 nonetheless should control. *Id*. at 511 ("We conclude the standards established in *Harper*
22 for involuntarily medicating prisoners strike the appropriate balance."). The court held that
23 the Due Process Clause allows a state hospital to forcibly drug a mentally ill patient who is
24 incompetent to make his own medical decisions if the patient is dangerous to himself or
25 others and the treatment is in the patient's medical interests. *Id*.

26 The Court finds that the *Harper* standards should apply here as well, even though
27 Tabari is a civil detainee, not an inmate. Although the immigration detention facility is not
28 a state prison, it has the same concerns for the safety of its detainees and employees as a

1 prison. The Court finds that the *Harper* standards strike the right balance between the
2 facility's interests and Tabari's liberty interests.

3 The Court finds the circumstances of *Sell v. United States*, 539 U.S. 166 (2003) less
4 analogous and therefore will not apply the standards set out in that case. In *Sell*, the Supreme
5 Court analyzed the proper standards for involuntarily medicating mentally ill pretrial
6 detainees in order to restore them to competency for trial. The goals of the Government in
7 this case are more similar to the prison's goals in *Harper* than the goal of rendering someone
8 competent to stand trial.

9 The *Sell* court itself pointed out that courts need not consider the *Sell* standards if
10 involuntary medication is warranted for a different purpose, such as reasons relating to an
11 individual's dangerousness to himself or others or the individual's health risks. *Id.* at 181-82
12 (citing *Harper*, 494 U.S. at 225-26). "There are often strong reasons for a court to determine
13 whether forced administration of drugs can be justified on these alternative grounds *before*
14 turning to the trial competence question." *Id.* at 182.

15 The Court therefore holds that the *Harper* standards apply here. The Government can
16 prevail on its Petition to involuntarily medicate Tabari with antipsychotic drugs if it
17 establishes that: 1) Tabari suffers from a serious mental illness; 2) Tabari is a danger to
18 himself or others; and 3) treatment is in his medical interest. The Court, however, will depart
19 from *Harper* in one respect. Because the Court, not medical professionals, will be making
20 the determination regarding forced medication, the Government must offer clear and
21 convincing proof of each of the three elements. *See Harper*, 494 U.S. at 235 (rejecting clear
22 and convincing burden because medical personnel were making the judgment required by
23 the regulations at issue); *U.S. v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010)(joining all
24 other circuits in requiring clear and convincing proof for *Sell* hearings and stating
25 "[A]lthough the Supreme Court rejected the contention that the clear and convincing standard
26 was required for *Harper* hearings conducted by medical professionals, the more error-prone
27 analysis involved in a *Sell* hearing conducted by judicial officers, calls for a more stringent
28 burden of proof.")(internal citations omitted).

The Court now turns to deciding whether the Government has met those standards with clear and convincing proof as a matter of law or whether the Court should deny the Motion and hold a hearing on the Petition. This case presents an unusual situation because Respondent's counsel have not received cooperation from Tabari, who, at times, has refused even to speak with his counsel.

Tabari's lack of cooperation has made it difficult for counsel to oppose the Motion for Summary Judgment. Counsel for Tabari also points out that the Government has not presented any "fresh" medical opinions regarding Tabari's current mental status and dangerousness to himself and others. On the other hand, the Court acknowledges the validity of the Government's arguments regarding opposing counsel's failure to obtain expert opinions and other controverting evidence. Nonetheless, given the importance of the liberty interests at stake, the Court finds a hearing is warranted. The Court therefore will deny the Motion for Summary Judgment, but does not hold that the Government could never prevail at the summary judgment stage in a forced medication proceeding for an immigration detainee.

### IV. Alternative Motion for Independent Psychiatric Exam

As an alternative to granting its Motion for Summary Judgment, the Government asks the Court to order an independent psychiatric examination. Although discovery has closed, the Court finds that an independent examination could help the Court to assess Tabari's current mental condition. The Court therefore will allow the Government to file a Motion for an Independent Medical Examination pursuant to Civil Rule of Civil Procedure 15(a)(2). The Court will set the time for the hearing on the Petition after it rules on the forthcoming Motion for Independent Medical Examination. The Court also notes that if it grants the forthcoming Motion, it will not allow additional dispositive motion briefing.

Accordingly,

**IT IS ORDERED** DENYING Respondent Tabari's Motion to Dismiss for Lack of Jurisdiction (Doc. 46), Motion for Judgment on the Pleadings (Doc. 43), and Motion to Strike (Doc. 67).

**IT IS FURTHER ORDERED** DENYING United States of America's Motion for Summary Judgment (Doc. 68).

**IT IS FURTHER ORDERED** GRANTING United States of America leave to file a Motion for Independent Psychiatric Examination pursuant to Federal Rule of Civil Procedure 35. The Government shall file its Motion within ten (10) days of the date of this Order.

DATED this 22nd day of July, 2011.

James A. Teilborg
United States District Judge